United States District Court
Southern District of Texas
**ENTERED**
August 10, 2016
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ANA MURILLO, | § | |
|     **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:16-49** |
| | § | |
| RELIANCE STANDARD LIFE | § | |
| INSURANCE CO.; DENISE PHILLIPS, | § | |
| AMERICAN FAMILY LIFE INSURANCE, | § | |
|     **Defendants.** | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Ana Murillo ("Murillo") brought this civil action against Reliance Standard Life Insurance Company[1], Denise Phillips ("Phillips"), and American Family Life Insurance ("AFLAC") in the 107th District Court in Cameron County, Texas, under Case No. 2016-DCL-01139. Murillo asserted that she was denied the life insurance benefits due to her after her husband's death.

On March 1, 2016, the instant case was removed to this Court. AFLAC asserted that this case posed a federal question under the Employee Retirement Security Income Act ("ERISA"). Dkt. No. 1. AFLAC asserted that ERISA pre-empted all of Murillo's state claims.

On March 31, 2016, Murillo filed a motion to remand the case, asserting that: (1) the insurance policy meets the specific requirements for a "safe harbor" exception from ERISA pre-emption; (2) her well-plead complaint is not subject to complete federal pre-emption; and (3) removal is procedurally defective due to lack of consent by Phillips. Dkt. No. 7. On April 11, 2016, AFLAC filed a timely response. Dkt. No. 14.

---

[1] Reliance Standard has since been dismissed as a defendant in this case. Dkt. No. 19. As such, the Court will not discuss or analyze the claims previously made against Reliance Standard.

1

After reviewing the record and the relevant case law, the Court recommends – for the reasons discussed below – that the motion to remand be **DENIED**.

## I. Background

### A. Factual Background

On February 15, 2016, Murillo filed a complaint against AFLAC in the 107th District Court of Cameron County, Texas. Dkt. No. 1-1, p. 3.  The complaint alleged that Murillo, at all relevant times, was an employee of a nursing home – Spanish Meadows Nursing & Rehab ("Spanish Meadows") – located in Brownsville, Texas. Id., p. 4.  During her employment, several nursing home employees, including Murillo, were solicited by AFLAC and Phillips – apparently an AFLAC employee – to purchase health and life insurance. Id. Murillo obtained life insurance on herself and also purchased dependent life coverage and accidental death coverage for her spouse. Id.  Murillo was the named beneficiary of her spouse's coverage. Dkt. No. 1-2, p. 27.

The insurance policy was issued to Spanish Meadows. Dkt. No. 1-2, p. 3.  Insurance coverage is automatic for all eligible classes of employees and was paid by the policyholder, Spanish Meadows. Dkt. No. 1, p. 1.  As for dependent coverage, policy premiums are deducted from the employee's wages by the employer. Id.  Thus, there was a single policy which covered both Murillo and her spouse, Spanish Meadows paid the premiums for the portion of the policy that covered Murillo, but Murillo paid all of the premiums for the portion of the policy covering her spouse. Dkt. No. 1-2, pp. 12, 27.

While the policy was in force, Murillo's spouse disappeared while driving in Matamoros, Mexico. Dkt. No. 1-1, p. 5.  The probate court of Cameron County, Texas, declared Murillo's spouse deceased, and thereafter Murillo made demand upon AFLAC to pay insurance benefits pursuant to the dependent insurance coverage. Id.  In response, AFLAC denied her claim. Id.

In the complaint, Murillo claims to be entitled to  $40,000 in accidental death benefits, as well as $150,000 in life insurance benefits pursuant to her spouse's coverage

under the policy. Dkt. No. 1-1, p. 5.

### B. Procedural History

On March 1, 2016, Reliance Standard timely removed the case to this Court. Dkt. No. 1.  In the removal petition, Reliance Standard alleged that the claims raised by Murillo are governed and completely pre-empted by ERISA, and thus removable to federal court. Id., p. 2.  On March 22, 2016, AFLAC consented to removal. Dkt. No. 8.

On March 21, 2016, Murillo timely filed a motion to remand the case to state court. Dkt. No. 7.  Murillo argues that her claims are not pre-empted by ERISA, and that the removal is procedurally defective, because Reliance Standard failed to seek consent from all co-defendants.  According to Murillo, no entry of consent to remove was ever submitted by Phillips.  No challenge has been made to AFLAC's consent. Dkt. No. 7.

On April 11, 2016, AFLAC timely responded to the motion to remand. Dkt. No. 14. In the response, AFLAC argues that Murillo's claims are pre-empted by ERISA and do not fall within the safe harbor exclusion.  Further, AFLAC asserts that removal was proper because the consent to removal requirement applies only to those defendants who have been properly served by the date of the removal.  AFLAC asserts that Phillips had not been properly served – nor was there any evidence of service – which negated any requirement for her consent.  Murillo did not file a reply.

## II. Applicable Law

### A.  Removal Based Upon A Federal Question

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable" to federal court. 28 U.S.C. § 1441(a)-(b).  The party seeking removal bears the burden of showing that jurisdiction exists and that removal is proper. De Aguilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir. 1995).  Jurisdiction is determined by examining the claims in the state court petition at the time of removal. Manguno v. Prudential Property and Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).

**B. Federal Pre-emption Law**

One type of case, in which removal to federal court is proper, arises "[w]hen a federal statute wholly displaces . . . [a] state-law cause of action through complete pre-emption." Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004) (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003)).  This is so because "[w]hen the federal statute completely pre[-]empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." Id. Thus, pursuant to 28 U.S.C. § 1441(b), any claim that "arises under federal law" may be removed to federal court.

**C. ERISA**

Congress enacted ERISA as a statutory scheme "to protect employees' rights to benefits while also encouraging employers to develop employee benefit programs." Martinez v. Schlumberger, Ltd., 338 F.3d 407 (5th Cir. 2003).  ERISA applies to any employee benefit plan established or maintained by an employer or an employee organization in commerce or in any industry or activity affecting commerce. See 29 U.S.C. § 1003(a).  To qualify as an ERISA plan, the plan must "fall[ ] outside the safe-harbor provisions established by the Department of Labor; and satisf[y] the primary elements of an ERISA 'employee benefit plan' – establishment or maintenance by an employer intending to benefit employees." McNeil v. Times Ins. Co., 205 F.3d 179, 190 (5th Cir. 2000)(citing Meredith v. Time Co., 980 F.2d 352, 355 (5th Cir. 1993).

**a. Safe Harbor Exclusion**

Some group-health plans are exempted from ERISA by its "safe harbor"clause.  Under the "safe harbor" provision – promulgated by the Department of Labor – an insurance policy is not governed by ERISA if:

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect

4

to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. §§ 2510.3-1(j).

All elements of the safe harbor provisions must be satisfied to negate ERISA coverage. Hansen v. Cont'l Ins. Co., 940 F.2d 971, 977 (5th Cir. 1991).

### b. ERISA Federal Pre-emption

"ERISA's civil enforcement scheme is laid out in § 502(a) of the ERISA statute," which is found at 29 U.S.C. § 1132. Lone Star OB/GYN Associates v. Aetna Health Inc., 579 F.3d 525, 529 (5th Cir. 2009). A civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "Therefore, if a party's state law claims fall under this § 502(a)(1)(B) definition, they are pre[-]empted by ERISA." Lone Star OB/GYN Associates, 579 F.3d at 529; Giles v. NYLCare Health Plans, 172 F.3d 332, 337 (5th Cir. 1997) (Section 502 "completely pre[-]empts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action").

As a result, "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Davila, 542 U.S. 200, 209 (2004).

## III. Analysis

In resolving the motion to remand, the Court must determine whether Murillo's claims are pre-empted by ERISA, thus solely raising a federal question. The Court must first decide whether the insurance policy constituted a plan under ERISA; and then, whether ERISA pre-empts any state law claims made by Murillo. The Court then turns to question of whether

this case was properly removed to this Court.

**A. ERISA Plan**

The first question is whether the benefit plan at issue constitutes an ERISA plan.  A plan qualifies as an ERISA plan if: (1) there is an identifiable plan; (2) it does not fall within the safe harbor exclusion established by the Department of Labor; and (3) it meets the ERISA requirement of establishment or maintenance by an employer for the purpose of benefitting the plan participant. McNeil, 205 F.3d at 189 (5th Cir. 2000).  The parties do not appear to dispute that the policy exists or that it was established for the purpose of benefitting the plan participants.  Further, there is no question that Murillo's employer paid the premiums for Murillo's coverage.  The contested issue is whether the policy falls within the safe harbor exclusion, based upon the fact that only Murillo paid the dependent coverage premiums for her spouse.

The Secretary of Labor has the authority to prescribe regulations for implementation of ERISA.  29 U.S.C. § 1135.  Pursuant to that authority, the Secretary has created exemptions for certain types of otherwise qualified plans. 29 C.F.R. § 2510.3-1(j) (1999).  As discussed above, the plan must meet four criteria to be exempt from ERISA coverage.  An insurance plan is not governed by ERISA if:  (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer received no profit from the plan. Id.

Murillo argues that even if an ERISA plan exists, the safe harbor provision applies as to the dependent coverage.  Murillo  points to the fact that all premiums for the dependent coverage were paid by her as a deduction from her wages, and thus her employer did not contribute to that plan.  Further, Murillo argues that while her coverage is not voluntary, coverage for dependents is expressly voluntary.

AFLAC asserts that the dependent coverage was an additional feature to the employer's basic coverage; thus the policy is viewed as one whole plan.  Based upon this view, since Murillo's employer paid the premiums for Murillo's coverage, her employer

contributed to the plan.  For that reason the plan – including the dependent coverage – falls outside the safe harbor provision.

Thus, the question seems to boil down to whether there was one policy (covering both Murillo and her husband) or there were two separate policies (one covering Murillo and a second covering Murillo's husband).  Stated somewhat differently, the parties disagree about whether – for ERISA purposes – the employer-paid coverage of the employee is a separate policy than the dependent coverage policy, which is paid for by the employee.

The Fifth Circuit has not addressed whether an employee-paid insurance feature is separate from other employer-paid benefits in determining whether the mixed type of payment plan is an ERISA plan.  Despite this fact, other District Courts within the Fifth Circuit have addressed the issue. Those courts have consistently concluded that, where there are additional features – in addition to the employee's basic coverage – the safe harbor exception does not apply.  This is the result even where the premiums for the optional coverage come from the employees themselves. See Armstrong v. Columbia/HCA Healthcare Corp., 122 F. Supp. 2d 739, 743 (S.D. Tex. 2000) (spousal life insurance coverage was a feature of the plan and cannot be severed from the overall benefit plan, regardless of the fact that the spousal coverage was paid for by the employee); Metoyer v. Am. Int'l Life Assur. Co., 296 F. Supp. 2d 745, 748-50 (S.D. Tex 2003) (the court drew a distinction between an "optional coverage provision that is a feature of an ERISA plan and coverage that arises under a policy distinct from an existing ERISA plan"); Altimari v. Sun Life Assur. Co., 654 F. Supp. 2d 553, 557 (E.D. Tex. 2009) (holding that the policy paid for by the employee was merely a feature of the overall benefits plan provided by the employer rather than a distinct policy); Pando v. Prudential Ins. Co. of Am., 511 F. Supp. 2d 732, 735-37 (W.D. Tex. 2007)("where the employer contributes to some, but not all, benefits which arise from the employment relationship, a court will separately evaluate whether a particular policy is an ERISA plan only when it is clearly separate from the benefits plan to which the employer does contribute.").

Furthermore, other federal circuit courts, which have addressed this issue, conclude similarly. See Sgro v. Danone Waters of N. Am., Inc., 532 F.3d 940, 943 (9th Cir. 2008) ("So long as [the employer] pays for some benefits, ERISA applies to the whole plan, even if employees pay entirely for some benefits."); Postma v. Paul Revere Life Ins. Co., 223 F.3d 533, 538 (7th Cir. 2000) (declined to unbundle a set of policies or benefits offered by an employer to its employees when evaluating whether ERISA governs); Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 463 (10th Cir. 1997) (optional coverage paid for by an employee cannot be severed from the overall benefit plan); Smith v. Jefferson Pilot Life Ins. Co., 14 F.3d 562, 567 (11th Cir. 1994) (holding that a spousal life insurance policy was "a feature of the Plan, notwithstanding the fact that the cost of such coverage had to be contributed by the employee."); Glass v. United of Omaha Life Ins. Co., 33 F.3d 1341, 1345 (11th Cir. 1994) (declining to sever the "Elect" life insurance policy from the rest of the benefit package even though it was paid solely by the employee).

In this case, the optional dependent coverage for Murillo's spouse is merely a feature of the overall benefit plan provided by the insurance policy, rather than a separate plan. Murillo's employer contributed to the overall benefit plan by paying the premiums for Murillo's coverage.  Thus, the overall plan, including the optional spousal coverage, is outside of the safe harbor exclusion.  Accordingly, Murillo's plan is an ERISA covered plan.

## B. ERISA Pre-empts Murillo's State Law Causes of Action

The Fifth Circuit has consistently applied a two-prong test to determine whether a state law claim is completely pre-empted by ERISA.  State law claims are pre-empted if: "(1) The state law claim addressees an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship among traditional ERISA entities – the employer, the plan and its fiduciaries, and the participants and beneficiaries." Mayeaux v. La. Health Serv. & Indem. Co., 376 F.3d 420, 432 (5th Cir. 2004).  Both prongs must be satisfied by AFLAC for ERISA to pre-empt Murillo's claims.

The first prong of pre-emption – whether the state law claim addresses areas of exclusive federal concern, such as the right to receive benefits under an ERISA plan – is met. Clearly, Murillo claims a right to receive benefits under the dependent coverage of the insurance policy.  Indeed, Murillo's claims arise from her allegations that she has been wrongfully denied life and accident insurance benefits.  Thus, she seeks benefits under an ERISA plan.

The existence of an ERISA plan – alone – does not necessitate pre-emption. Weaver v. Employers Underwriters, Inc., 13 F.3d 172, 176 (5th Cir. 1994).  For pre-emption to occur, the claims must also satisfy the second prong and "directly affect the relationship between traditional ERISA entities – the employer, the plan and its fiduciaries, and the participants and beneficiaries." See 29 C.F.R. § 2510.3-3(b)(2001).

Claims of breach of duty of good faith, breach of fiduciary duty, denial of benefits, misrepresentation, breach of contract, etc., are pre-empted by ERISA only when the claimant is a plan "participant," "beneficiary," or other party entitled to standing under ERISA. Weaver, 13 F.3d at 177.  ERISA defines beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

The insurance policy establishes that Murillo is the named beneficiary of the dependent insurance coverage.  The policy states that "when an Insured Dependent dies, we will pay the applicable benefit shown on the Schedule of Benefits to the Insured." Dkt. No. 1-2, p. 27.  In this case, the named beneficiary is Murillo and the insured dependent is her spouse.  Therefore, under the definition's plain language, Murillo is a beneficiary.

Additionally, Murillo argues that the state court retains concurrent jurisdiction under ERISA. See 29 U.S.C. § 1132(e)(1).  While it is correct that a state court has concurrent jurisdiction under 29 U.S.C. § 1132(e)(1), that matters little in determining whether remand is proper.  The question is whether the matter was properly removed to this Court, based upon federal question jurisdiction under 28 U.S.C. §§ 1331, 1441, and 29 U.S.C. § 1132.

Regardless of concurrent jurisdiction, a defendant may remove a case when a district court maintains original jurisdiction. Baldwin v. Sears, Roebuck & Co., 667 F.2d 458, 459-60 (5th Cir. 1982).

In summary, Murillo's state law claims address areas of exclusive federal concern, because she is claiming a right to receive benefits under the terms of an ERISA plan. Furthermore, Murillo's claims directly affect the relationship between traditional ERISA entities, because she is a plan beneficiary. Thus, both elements of pre-emption are satisfied. Therefore, ERISA pre-empts Murillo's state law claims against AFLAC for bad faith and violations of the Texas Insurance Code.

### C. Removal Is Not Procedurally Defective

Although not explicit, Section 1446(a), of Title 28, has been interpreted to "require that all then served properly joined defendants join in the removal petition." Getty Oil Corp., Div. of Texaco, Inc. v. Ins. Co. of N. Am., 841 F.2d 1254, 1262 (5th Cir. 1988) (emphasis added). This requirement has been labeled the "unanimity of consent rule." Ortiz v. Young, 431 Fed. App'x. 306, 307 (5th Cir. 2011).

The Fifth Circuit has recognized three exceptions to the unanimity rule. Consent to removal is not required from: (1) improperly or fraudulently joined parities; (2) nominal or unnecessary defendants; and (3) defendants who have not been served by the time of the removal. McDonald v. Raycom TV Broad, Inc., 2009 WL 1149569, at *1 (S.D. Miss. Apr. 29, 2009); see also Jernigan v. Ashland Oil Inc., 989 F.2d 812, 815 (5th Cir. 2003); Farias v. Bexar Cnty. Bd. of Tr. For Mental Health Mental Retardation Servs., 925 F.2d 866, 871 (5th Cir. 1991); Jones v. Houston Indep. Sch. Dist., 979 F.2d 1004, 1007 (5th Cir. 1992).

Murillo argues that removal was improper because Phillips did not, and to date has not, consented to the removal. Dkt. No. 7, p. 6. AFLAC asserts that the consent to removal requirement does not apply to Phillips, because "[t]here is no evidence that Denise Phillips has ever received citation or been served, and certainly no evidence that she was served by the date of the removal." Dkt. No. 14, p. 2.

District Courts within the Fifth Circuit generally agree that "joinder in or consent to the removal petition must be accomplished by only those defendants: (1) who have been served; and, (2) whom the removing defendant(s) actually knew or should have known had been served." Milstead Supply Co. v. Cas. Ins. Co., 797 F. Supp. 569, 573 (W.D. Tex. 1992); Watson v. Watson, No. 4:13cv137, 2013 WL 5230651, at 2* (E.D. Tex. Sept. 17, 2013); Waffer v. City of Garland, 2001 WL 1148174, at *2 (N.D. Tex. Sept. 19, 2001) (holding consent to removal was unnecessary if official case file gave no indication that non-removing defendant had been served); Faulk v. Owens-Corning Fiberglass Corp., 48 F. Supp. 2d 653, 667-69 (E.D. Tex. 1999).

The record does not reflect that Phillips had been served at the time of removal – or that she has ever been served with a summons and copy of the complaint. See FED. R. CIV. P. 4(e)(1) (summons is to be served in accordance with the state law of the state where the federal court is located); TEX. R. CIV. P. 99(a)-(b) (requiring that citation and a copy of the complaint be served on a defendant); F.D.I.C. v. Bauman, 2004 WL 1732933, at *2 (N.D. Tex. July 30, 2004) (noting that in "federal district court, a summons is the functional equivalent of a citation" in state court). Thus, her consent to the removal was not necessary. Jones, 979 F.2d at 1007 (5th Cir. 1992) (unserved defendant's "failure to join in the removal petition is not a bar to the federal court's jurisdiction"). Accordingly, the removal was procedurally proper.

## IV. Recommendation

It is **RECOMMENDED** that the motion to remand filed by Ana Murillo, Dkt. No. 7, be **DENIED**.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking

on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on August 10, 2016.

_____
Ronald G. Morgan
United States Magistrate Judge

12