IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ANA MURILLO | § | |
|       Plaintiff | § | |
| VS. | § | **CIVIL ACTION NO. 1:16-CV-00049** |
| | § | JURY REQUESTED |
| RELIANCE STANDARD LIFE | § | |
| INSURANCE COMPANY; DENISE | § | |
| PHILLIPS; AMERICAN FAMILY LIFE | § | |
| INSURANCE | § | |
|       Defendants | § | |

**<u>DEFENDANT AMERICAN FAMILY LIFE ASSURANCE COMPANY OF
COLUMBUS'S MOTION FOR SUMMARY JUDGMENT</u>**

1

**TABLE OF CONTENTS AND TABLE OF AUTHORITIES**

**TABLE OF CONTENTS**

I. INTRODUCTION: BASIS FOR THE MOTION AND SUMMARY OF THE ARGUMENT
    p. 1

II. FACTS SUPPORTNG THE MOTION     p. 2

    A. Evidence supporting Legal Issue that Plaintiff's claims involve an ERISA Plan (which pre-empts all extra-contractual and state law causes of action)     p. 2

    B. Evidence supporting Legal Issue that the Policies at issue, which Plaintiff received, contain written terms providing that Plaintiff Ana Murillo was the only Insured
    p. 3

    C. Evidence supporting Legal Issue that Plaintiff applied for and received Policy PW960794 after her husband Jorge Murillo was already dead, as she later had him legally declared     p. 6

    D. Evidence supporting Legal Issue that AFLAC denied Plaintiff's claims based upon its (reasonable) interpretation that there was no coverage for Plaintiff's spouse under these individual coverage policies     p. 6

III. STATEMENT OF THE ISSUES TO BE RULED UPON BY COURT     p. 6

IV. STANDARD OF REVIEW FOR SUMMARY JUDGMENT     p. 7

V. ARGUMENT AND AUTHORITIES     p. 8

    A. Because Plaintiff's suit arises from her claim that she should have received benefits under a life insurance policy that was part of an overall ERISA benefit plan, she is limited to ERISA claims for denial of benefits, to be decided under the ERISA standard of review.     p. 8

        1. Plaintiff's claims "relate to" an employee benefit plan and are thus governed by ERISA and its preemption of all but claims for benefits. p. 8

        2. A denial of benefits claim under ERISA evaluates whether the denial was legally correct, or otherwise, if it was reasonable or an abuse of discretion. p. 12

        3. The clear and unambiguous language of the Policies reflect that Plaintiff did not obtain coverage for her deceased spouse, so she is not entitled to benefits for his death. p. 14

    B. Alternatively, even if analyzed as a state law breach of contract claim, the summary judgment record demonstrates that the Policies' unambiguous language did not provide coverage for the deceased, so no breach of contract occurred as a matter of law.     p. 15

    C. Even if Plaintiff's extra-contractual claims were permitted and not preempted under ERISA, AFLAC should receive complete summary judgment, because it had a reasonable reason to deny Plaintiff's claims as a matter of law.     p. 17

III. CONCLUSION     p. 17

## TABLE OF AUTHORITIES

*Acuna v. Connecticut General Life Insurance Co.,* 572 F.Supp.2d 713 (E.D. Tex. 2008), pp. 10, n.1; 11

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), p. 8

*Altimari v. Sun Life Assurance Company of Canada*, 654 F.Supp. 2d 553 (E.D. Tex. 2009) p. 11

*Arredondo v. Hartford Life and Accident Insurance Co.,* 860 F.Supp.2d 363 (S.D. Tex. 2012), pp. 16, 17

*Baptist Hospital of Southeast Texas v. United HealthCare of Texas, Inc.,* 216 F.Supp.2d 625 (E.D. Tex. 2002), p. 9

*Bates v. Jackson National Life Insurance Co.*, 927 F.Supp. 1015 (S.D. Tex. 1996), p. 17

*Brachett v. Universal Life Insurance Co.*, 488 S.W.2d 584 (Tex. Civ. App. – Beaumont 1972, no writ), p. 16

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986), pp. 7, 16

*Cox v. Pyramid Life Insurance Co.*, 150 S.W.2d 819 (Tex. Civ. App. – Dallas 1941, writ ref'd), p. 16

*Crose v. Humana Insurance Co.,* 823 F.3d 344 (5th Cir. 2016), pp. 7, 15

*Data Specialties, Inc. v. Transcontinental Ins. Co.,* 125 F.3d 909 (5th Cir.1997), p. 15

*Flesner v. Flesner,* 845 F.Supp.2d 791 (S.D. Tex. 2012), *appeal dismissed* (5th Cir. 2012), p. 12

*Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.,* 538 F.3d 365 (5th Cir. 2008), p. 7

*Gabner v. Metropolitan Life Insurance Co.*, 938 F.Supp. 1295 (E.D. Tex. 1996), p. 12

*Garza v. Sun Life Assurance Co. of Canada*, 2013 WL 1816989 (S.D. Tex. 2013), *appeal dismissed* (5th Cir. 2013)(Not Reported in F.Supp.), pp. 13 - 14

*Grain Dealers Mutual Insurance Co. v. McKee,* 943 S.W.2d 455 (Tex. 1997), p. 15

*Harris v. Transamerica Life Insurance Co.,* 533 F.Supp.2d 696 (W.D. Tex. 2013)(mem.op.), p. 15

*House v. American United Life Insurance Co.,* 499 F.3d 443 (5th Cir. 2007), *cert. denied* (2008), pp. 11, 12

*Juckett v. Beecham Home Improvement Products, Inc.,* 684 F.Supp. 448 (N.D. Tex. 1988), p. 9

*Likens v. Hartford Life and Accident Insurance. Co.*, 688 F.3d 197 (5th Cir. 2012), p. 15

*Light v. Blue Cross & Blue Shield, Inc.*, 790 F.2d 1247 (5th Cir. 1986), p. 9

*Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.3d 55 (1987), p. 9

*Pando v. Prudential Insurance Co. of America*, 511 F.Supp.2d 732 (W.D. Tex. 2007), p. 11

*Ramirez v. Inter-Continental Hotels,* 890 F.2d 760 (5th Cir. 1989), pp. 8 – 9

*Singletary v. United Parcel Service, Inc.*, 828 F.3d 342 (5th Cir. 2016), pp. 12 – 13; 14, n. 2

*Sofo v. Pan-American Life Insurance Co.*, 13 F.3d 239 (7th Cir. 1994), p. 12


28 U.S.C. § 1331, p. 9

28 U.S.C. §1441(b), p. 9

29 U.S.C. §1001, pp. 1, 9

29 U.S.C. § 1002, p. 10, n.1

29 U.S.C. § 1003, p. 10, n. 1

29 U.S.C. § 1132, p. 8

29 C.F.R. §§ 2510.3-1(j), p. 10

Fed.R.Civ.Proc. 56(c), p. 7

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Defendant AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS ("AFLAC") files this Motion for Summary Judgment, and would show the Court the following:

## I.
## INTRODUCTION:  BASIS FOR THE MOTION
## AND SUMMARY OF THE ARGUMENT

Plaintiff's current Complaint asserts claims of common law fraud, breach of contract, violations of the Texas Insurance Code, negligence, and in the alternative, violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  All of Plaintiff's claims arise from her allegations that she purchased two supplemental life insurance policies, AFLAC Policies PH649976 and PW960794 ("the Policies"), offered through her employment, which she contends covered not only herself but her husband, and that AFLAC did not pay benefits for her husband's September of 2009 death.    Plaintiff's claims are thus all subject to ERISA.

Because the only legally correct and reasonable reading of the Policies is that they covered Plaintiff only and not her husband, AFLAC is entitled to complete summary judgment in its favor.    The undisputed summary judgment evidence demonstrates that the clear and unambiguous terms of the two written policies covered only Plaintiff herself and not her husband, and Plaintiff admits she signed, obtained, and had in hand copies of the policies from shortly after her initial application through making her claims.    Whether decided under ERISA or state law, the unambiguous terms of the policies clearly provided coverage only for Plaintiff and not for her spouse, so AFLAC is entitled to summary judgment on Plaintiff's claims for benefits. An additional reason AFLAC is entitled to summary judgment on the second policy is that the policy was obtained over a year after her husband died.  ALFAC should also receive

summary judgment on Plaintiff's remaining causes of action (common law fraud, violations of

the Texas Insurance Code, and negligence) for two reasons, First, those claims are preempted by

ERISA.     In addition, because the undisputed evidence demonstrates a reasonable basis for

AFLAC's denial of Plaintiff's claims, no evidence could support extra-contractual tort claims

based upon an alleged bad faith or fraudulent denial as a matter of law.  AFLAC is thus entitled

to complete summary judgment in its favor in this case.

**II.**
**FACTS SUPPORTING THE MOTION**

This Motion for Summary Judgment is based upon the following points and items of

undisputed evidence, which can be taken as true for the basis of the Motion.

### A. Evidence supporting Legal Issue that Plaintiff's claims involve an ERISA Plan (which pre-empts all extra-contractual and state law causes of action)

(1)     As part of offering the AFLAC policies within a Flexible Spending Plan,

Plaintiff's employer Spanish Meadows negotiated and established criteria by which employees

were eligible to purchase coverage, such as the decision as to when an employee would become

eligible to elect the coverage, the decision not to include additional disability coverages within

the policy originally, and a revision to the plan to include the optional disability coverages as of a

later date (approximately November 22, 2006).  *See, Exhibit "A" hereto, Declaration of Jennifer*

*Jeter, and Exhibits "A-1" and "A-2" thereto.*

(2)     Plaintiff's employer's human resources manager helped Plaintiff make a claim on

the AFLAC policies by providing her with information and instructions as to how to do so.

*See, Exhibit "B" hereto, Deposition of Ana Murillo, attached to the Declaration of Alison*

*Kennamer, page 72, line 25 – page 75, line 11.*

**B.   Evidence supporting Legal Issue that the Policies at issue, which Plaintiff received, contain written terms providing that Plaintiff Ana Murillo was the only Insured**

(1)      AFLAC Accident Policy PH649976, issued to Ana Murillo with an effective date of October 1, 2006, incorporated the application and included the following written provisions:

> TYPE OF COVERAGE:  see your Policy Schedule to determine the Type of Coverage issued: Individual, Named Insured/Spouse Only, One-Parent Family, or Two-Parent Family.
>
> (1) **Individual:** coverage for only you (the Insured listed in the Policy Schedule)
> …

*See, Exhibit "B" hereto, Deposition of Ana Murillo, page 44, line 2 – page 45, line 5, and Exhibit 3 thereto, page 20 of 32.*

> … (Write spouse's name below if you are applying for family coverage; if no spouse or if spouse is not to be covered, put N/A in space below.)
>
> Spouse's Name **None** …
>
> …
>
> **CHECK COVERAGE DESIRED: X** Individual
>
> CHECK COVERAGE DESIRED  X̲ Individual  …
> … X̲ Level 2 Policy Series A-34200  $26.50  X̲ Pre-Tax …
> Total Premium $26.50

*See, Exhibit "B" hereto, Deposition of Ana Murillo, Exhibit 3, page 30 of 32.*

> **I have read, or had read to me, the completed application.  I realize that policy issuance is based upon statements and answers provided herein, and they are true an complete to the best of my knowledge and belief. …**

*See, Exhibit "B" hereto, Deposition of Ana Murillo, Exhibit 3, page 31 of 32.*

(2)      The Policy Schedule for AFLAC Accident Policy PH649976, included the following:

Policy Schedule

INSURED: Ana N. Murillo
TYPE OF COVERAGE: INDIVIDUAL     POLICY NUMBER: PH649976
MODE OF PAYMENT: Bi-Weekly      PREMIUM: $13.25

…

*See, Exhibit "B" hereto, Deposition of Ana Murillo, Exhibit 2 thereto; see also Exhibit 3*

*thereto, page 30 of 32.*

(3)     Ana Murillo had received and had in her possession her signed application and

copy of her Policy PH649976 shortly after its issuance. *See, Exhibit "B" hereto, Deposition of*

*Ana Murillo, page 42, line 14 – page 45, line 18; page 46, line 12 – page 46, line 23.*

(4)     Ana Murillo was charged and paid the indicated premium for individual coverage

only, not for any other level of coverage. *See, Exhibit "B" hereto, Deposition of Ana Murillo,*

*page 45, line 6 – page 45, line 18.*

(5)     AFLAC Accident Policy PW960794, issued to Ana Murillo with an effective date

of October 1, 2010, incorporated the application and included the written provisions:

NAMED INSURED: the person whose life is insured under the policy and is
named as such on the Policy Schedule. The Named Insured is not the person
insured in any spouse or child rider.
…

*See, Exhibit "B" hereto, Deposition of Ana Murillo, page 60, line 24 – page 61, line 18;*

*and Exhibit 6 thereto, page 9 of 26.*

…

**(Write spouse's name below if you are applying for coverage; if no spouse or
if spouse will not be covered, put "N/A" or "none")**

Spouse's Name **None** …

…

*See, Exhibit "B" hereto, Deposition of Ana Murillo, Exhibit 6, page 18 of 26.*

Billable Premium $33.14          Premium Collected $ PR

…

**CHECK COVERAGE DESIRED:**

...

**X** 20-Year Term Policy (Series ICC0964300)
   _ Spouse 20-Year Term Life Insurance Rider (Series ICC0964051)
   _ Spouse 10-Year Term Life Insurance Rider (Series ICC0964050)

*See, Exhibit "B" hereto, Deposition of Ana Murillo, Exhibit 6, page 19 of 26.*

I understand that the Policy Effective Date will be the date recorded in the Policy Schedule by Aflac Worldwide Headquarters.  It is not the date this application was signed.

…

I understand that (1) the policy of insurance I am now applying for will be issued based upon the written answers to the questions and information asked for in this application and any other pertinent information Aflac may require for proper underwriting …

*See, Exhibit "B" hereto, Deposition of Ana Murillo, Exhibit 6, page 23 of 26.*

(6)      Ana Murillo had received and had in her possession her signed application and copy of her Policy PW960794 containing this language shortly after its issuance.  *See, Exhibit "B" hereto, Deposition of Ana Murillo, page 60, line 24 – page 62, line 16.*

(7)      The Policy Schedule for AFLAC Accident Policy PW960794 included the following:

**POLICY SCHEDULE**
**20-YEAR LEVEL TERM POLICY**

...

**Named Insured:** Ana L. Murillo      **Policy Effective Date:** October 1, 2010
…

*See Exhibit "B" hereto, Deposition of Ana Murillo, Exhibit 5 thereto, page 8 of 19.*

(8)     Ana Murillo was charged and paid the indicated premium for individual coverage only, not for any other level of coverage.     *See, Exhibit "B" hereto, Deposition of Ana Murillo, page 60, line 1 – page 60, line 23.*

### C. Evidence supporting Legal Issue that Plaintiff applied for and received Policy PW960794 after her husband Jorge Murillo was already dead, as she later had him legally declared

(9)     By Court Order Authorizing Letters of Independent Administration on February 11, 2014 in Cause No. 2013-CRC-19 in the County Court at Law No. 3 Cameron County Texas, *In re The Death of Jorge Luis Murillo Deceased,* the presiding probate court found:

> 1. Jorge Luis Murillo died on or about September 11, 2009, or soon thereafter in Mexico. …
>
> *See, Exhibit "B" hereto, Deposition of Ana Murillo, Exhibit 9 thereto.*

(10)    In a sworn Proof of Death, Plaintiff testified that after her husband Jorge Murillo disappeared on September 11, 2009, she had no more communication with him and she believed based upon the facts that he had died then or soon after. *See, Exhibit "B" hereto, Deposition of Ana Murillo, page 67, line 15 – page 68, line 13, and Exhibit 10 thereto, pages 6 – 7 of 12.*

### D.  Evidence supporting Legal Issue that AFLAC denied Plaintiff's claims based upon its (reasonable) interpretation that there was no coverage for Plaintiff's spouse under these individual coverage policies

(11) AFLAC denied Plaintiff's claims under the Policies based upon the coverage being individual as to Ana Murillo only and not covering the death of Jorge Murillo. *See, Exhibit "A" hereto, Declaration of Jennifer Jeter, and Exhibits "A-3" and "A-4" thereto.*

### III.
### STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

(1)     Whether Plaintiff's extra-contractual claims and state law claims are pre-empted by ERISA, leaving her only with a claim for improper denial of benefits under ERISA.

(2)     Whether AFLAC's interpretation that Plaintiff had not obtained coverage for her deceased spouse under the Policies was correct and reasonable under ERISA because the Policies' terms insured only Ana Murillo's life and not that of her spouse Jorge Murillo, such that it is entitled to summary judgment in its favor on Plaintiff's claims.

(3)     Alternatively, whether, even under applicable state law rules of contract interpretation, the Policies' terms insured only Ana Murillo's life and not that of her spouse Jorge Murillo as a matter of law.

(4)     Whether it would have been impossible for Plaintiff to insure Jorge Murillo under Policy PW960794 in any event, since it was issued on October 1, 2010, and he had been known by his wife to be and was ultimately declared legally dead as of September of 2009.

(5)     Whether any tort claims against AFLAC (if not preempted by ERISA) fail as a matter of law, because there is no evidence that AFLAC acted unreasonably when it made the decision to deny Plaintiff's request for benefits arising from the death of Jorge Murillo under the Policies, based upon the reasonable belief that the Policies' terms insured only Ana Murillo's life and not that of her spouse Jorge Murillo.

## IV.
## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Once the movant meets its initial burden to show from the evidence in the summary judgment record that there is "no genuine issue as to any material fact," Fed.R.Civ.Proc. 56(c), summary judgment is proper if the summary judgment record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Crose v. Humana Insurance Co.,* 823 F.3d 344, 347 (5th Cir. 2016); *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.,* 538 F.3d 365, 368 (5th Cir. 2008), *quoting Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

7

**V.**
**ARGUMENT AND AUTHORITIES**

A. **Because Plaintiff's suit arises from her claim that she should have received benefits under a life insurance policy that was part of an overall ERISA benefit plan, she is limited to ERISA claims for denial of benefits, to be decided under the ERISA standard of review.**

   1. Plaintiff's claims "relate to" an employee benefit plan and are thus governed by ERISA and its preemption of all but claims for benefits.

Plaintiff's claims "relate to" an employee benefit plan and are completely preempted by ERISA, because they fall within the scope of 29 U.S.C. § 1132(a), and because they seek remedies that conflict with those found in ERISA. Plaintiff alleges that "[o]n a yearly basis nursing home employees [where she worked] were lined up and processed in an assembly line fashion for the processing of various employment benefits elections," *see, Plaintiff's Amended Complaint, paragraph 4, "Allegations: American Family Life Insurance / Denise Phillips,"* that she "always requested spousal coverages," *see, Plaintiff's Amended Complaint, paragraph 4, "Allegations: American Family Life Insurance / Denise Phillips,"* that after the disappearance of her husband (later described as his death) Plaintiff contacted AFLAC about "filing a claim," but was told that she would have to wait 7 years, *see, Plaintiff's Amended Complaint, paragraph 4, "Allegations: American Family Life Insurance / Denise Phillips."* Plaintiff is thus complaining about an alleged failure by AFLAC to pay benefits under what she claims were accidental death and life insurance coverages that she was entitled to obtain as a supplemental benefit through her employment. These would be claims for benefits under an employee benefit plan.

It is well-settled in the Fifth Circuit and the Texas Federal District Courts that state law claims for personal injury damages in cases such as this, including claims for bad faith and violations of the Texas Insurance Code, are pre-empted by ERISA. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004); s*ee also, e.g., Ramirez v. Inter-*

*Continental Hotels,* 890 F.2d 760 (5th Cir. 1989) (Texas Insurance Code claims pre-empted by ERISA); *Light v. Blue Cross & Blue Shield, Inc.,* 790 F.2d 1247 (5th Cir. 1986) (ERISA pre-empts claims for bad faith refusal to pay medical expenses and infliction of emotional distress); *Baptist Hospital of Southeast Texas v. United HealthCare of Texas, Inc.,* 216 F.Supp.2d 625 (E.D. Tex. 2002) (Texas Insurance Code provisions that provide alternative means to recover benefits than means found in ERISA's civil enforcement provisions pre-empted by ERISA); *Juckett v. Beecham Home Improvement Products, Inc.,* 684 F.Supp. 448 (N.D. Tex. 1988) (penalty and attorneys' fee provisions of Texas Insurance Code pre-empted by ERISA).

As explained clearly by the United States Supreme Court in *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.3d 55 (1987), "... a suit by a beneficiary to recover benefits from [p. 63] a covered plan [ ] falls directly under §502(1)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes. *Metropolitan Life Insurance Co.,* 481 U.S. at 63, 107 S.Ct. at _____, 95 L.Ed.3d at _____.    As the Court set out further, because the litigation involved a claim for benefits:

> Accordingly, this suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress. It, therefore, "arise[s] under the ... laws ... of the United States," 28 U.S.C. §1331, and is removable to federal court by the defendants, 28 U.S.C. §1441(b).

*Metropolitan Life Insurance Co.,* 481 U.S. at 67, 107 S.Ct. at _____, 95 L.Ed.3d at _____.    Similarly here, all of Plaintiffs' claims arise from her allegations that she had been allegedly wrongfully denied life and accident insurance benefits from an employer's ERISA benefit plan. Plaintiff's attempt to plead the case as involving only state law claims must not be allowed to interfere with the true nature of the claims, involving exclusive federal subject matter jurisdiction.

The "safe harbor" exception to ERISA preemption as defined by Fifth Circuit caselaw does not apply.[1] The safe harbor provision promulgated by the Department of Labor provides that an "employee welfare benefit plan:"

> shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [sic] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. §§ 2510.3-1(j).

---

[1]    The policies at issue are ERISA-plan related policies, because the definition of a "plan" is so expansive:

ERISA applies to any "employee benefit plan" if it is established or maintained by any employer or employee organization engaged in commerce, or in any industry or activity affecting commerce. 29 U.S.C. § 1003(a). An "employee benefit plan" or "welfare plan" means:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1)

*Acuna v. Connecticut General Life Insurance Co.,* 572 F.Supp.2d 713, 718 (E.D. Tex. 2008).

*Acuna,* 572 F.Supp.2d at 719, *see also, Altimari v. Sun Life Assurance Company of Canada,* 654 F.Supp. 2d 553, 556 (E.D. Tex. 2009).

Where a type of coverage, such as spousal coverage, is an additional feature to the employer's basic coverage, the policy fails to meet the first element of the "safe harbor" exception, even where the premiums for spousal coverage come from the employee herself. *See, Altimari,* 654 F.Supp. 2d at 556 – 557, *and the cases cited therein. See also, House v. American United Life Insurance Co.,* 499 F.3d 443, 449 - 450 (5th Cir. 2007), *cert. denied* (2008) (Plan that included paid disability coverage for non-partner employees but used partners' pre-draw funds for partner premiums still outside of "safe harbor" since policy overall was not 100% funded by individuals). Here, the AFLAC coverages were additional to basic policies offered by another carrier, as alleged in Plaintiff's original Complaint, and are also within an ERISA plan because there were part of the overall package of benefits provided by Spanish Meadows to employees *See, Pando v. Prudential Insurance Co. of America,* 511 F.Supp.2d 732 (W.D. Tex. 2007).

As part of offering the AFLAC policies within a Flexible Spending Plan, Spanish Meadows negotiated and established criteria by which employees were eligible to purchase coverage, such as the decision as to when an employee would become eligible to elect the coverage, and the original decision not to include additional disability coverages within the policy. Spanish Meadows even eventually implemented a revision to the plan to include optional disability coverages as of a later date (approximately November 22, 2006).   *See, Declaration of Jennifer Jeter, Exhibit "A" hereto, and Exhibit "A-1" and "A-2" thereto.* This gave Spanish Meadows a more significant role in administering the coverage than that of simply ministerially collecting and distributing premium payments., particularly evident by its decision to revise the plan to add additional disability coverages after a period of time.  These facts independently take

the AFLAC policies out of the "safe harbor" provisions and insure that they are covered by ERISA preemption, as well. *See, House,* 499 F.3d at 447 (where employer firm's involvement included such tasks as determining eligibility for participation and enrollment, more than ministerial duties under the "safe harbor" had been involved).

In addition, Spanish Meadows undertook additional non-ministerial actions with respect to the policies, including assistance with claims submission. *See, Flesner v. Flesner,* 845 F.Supp. 791,798 (S.D. Tex. 2012), *appeal dismissed* (5th Cir. 2012) (where employer provided benefits administrator who oversaw communications with the carrier, assisted in the collection of premium through payroll deductions, and advised employees as to benefits and claims, actions exceeded those minimums found in "safe harbor" exceptions).

The ERISA preemption analysis means that Plaintiff possesses no tort claims as a matter of law, and that her "breach of contract" claim must be recast under its proper name, a claim solely for denial of ERISA benefits. *See, Sofo v. Pan-American Life Insurance Co.*, 13 F.3d 239, 241 (7th Cir. 1994); *See also, Gabner v. Metropolitan Life Insurance Co.*, 938 F.Supp. 1295, 1301 (E.D. Tex. 1996).

> 2. A denial of benefits claim under ERISA evaluates whether the denial was legally correct, or otherwise, if it was reasonable or an abuse of discretion.

The Fifth Circuit has analyzed denial of benefits claims before, and have explained the application of the standard of proof in such cases:

> ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 108, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). When reviewing a denial of benefits made by an ERISA plan administrator, the court applies a *de novo* standard of review, "unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan confers this discretionary authority

on the administrator, we review the exercise of the authority for abuse of discretion. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009). Here, all parties agree that the plan vests discretionary authority with the administrator. Hence, our review is for abuse of discretion.

We generally evaluate an administrator's decision in a two-step analysis. *347 *See Bakerv.Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004). First, we must determine whether the administrator's interpretation was legally correct. *Id.* at 629–30. If so, our inquiry ends. *Id.* If not, we must determine whether the administrator's interpretation was an abuse of discretion. *Id.* at 630. "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland*, 576 F.3d at 246 (quotation marks omitted). Moreover, "[i]f the ... decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007). Ultimately, "our review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Id.* at 398.

*Singletary v. United Parcel Service, Inc.*, 828 F.3d 342 (5th Cir. 2016).

In *Singletary*, Plaintiff had purchased supplemental life insurance coverage from Prudential for her husband through her employer's Supplemental Benefits Plan. Under the terms of the Prudential policy, only a "Qualified Dependent" could be covered in addition to the employee, but the language of the Plan provided that a "spouse [or] Domestic Partner ... is not [a] Qualified Dependent while ... on active duty in the armed forces of any country." *Id.* at 346. Plaintiff's husband was on active duty service at Fort Hood when he was killed in a motorcycle accident; Plaintiff made a claim for the death benefits under the supplemental coverage, and Prudential denied the claim because Singletary's husband had been excluded from being a Qualified Dependent. *Id.* The Fifth Circuit found that the clear language of the Plan excluded the spouse, and thus he could not be an insured. Prudential was entitled to summary judgment as a matter of law. *See also, Garza v. Sun Life Assurance Co. of Canada*, 2013 WL 1816989 (S.D. Tex. 2013), *appeal dismissed* (5th Cir. 2013)(Not Reported in F.Supp.)(where undisputed factual

record revealed that plaintiff's husband died as a result of an allergic reaction to a wasp sting, insurer was entitled to summary judgment in claim for benefits under accidental death benefit life insurance policy; Sun Life did not abuse its discretion in determining that the allergic reaction was a disease rather than an accident), *courtesy copy attached hereto as Exhibit "C."*

> 3    The clear and unambiguous language of the Policies reflect that Plaintiff did not obtain coverage for her deceased spouse, so she is not entitled to benefits for his death.

The unambiguous language of the Policies indicates that Ana Murillo was the only insured and not her spouse Jaime Murillo such that there are no benefits owed to Plaintiff for the death of her husband as a matter of law. The clear language of each Policy indicates that no coverage was obtained for Plaintiff's husband. Each Policy included a definition of who was an insured under that Policy. *See, Exhibit "B" hereto, Deposition of Ana Murillo, Exhibit 3 and Exhibit 6.* In each case, the written Policy clearly indicated that only Plaintiff herself had been insured. Plaintiff actually signed each application, and she admitted that she actually had these documents in her possession shortly after issuance of each Policy. *See, Exhibit "B" hereto, Deposition of Ana Murillo, page 42, line 14 – page 45, line 18; page 46, line 12 – page 46, line 23; page 60, line 24 – page 62, line 16.*[2] In each case, Plaintiff has acknowledged that she paid only the premium amount as indicated in the written policy – and thus as calculated for single individual coverage only. *See, Exhibit "B" hereto, Deposition of Ana Murillo, page 45, line 6 – page 45, line 18; page 60, line 1 – page 60, line 23.* AFLAC's legally correct interpretation – and the only reasonable interpretation – was that Plaintiff's deceased husband was never covered under either Policy.

---

[2]    Although Plaintiff did possess copies of the Policies with relevant Policy language indicating that only she had been insured, lack of notice is not a defense to a denial of benefits claim. *See, Singletary,* 828 F.2d at 349.

14

AFLAC's determination that the decedent was not covered under the Policies was both legally correct and reasonable. Plaintiff's claim for denial of benefits against it fails under the applicable summary judgment standard.

**B. Alternatively, even if analyzed as a state law breach of contract claim, the summary judgment record demonstrates that the Policies' unambiguous language did not provide coverage for the deceased, so no breach of contract occurred as a matter of law.**

Should the Court conclude that Plaintiff's state law claims are not preempted under ERISA, AFLAC is entitled to summary judgment on the breach of contract claim under a state law analysis of the contractual claim as well.  Under Texas law, an insurance contract is interpreted using ordinary rules of contract construction. *Likens v. Hartford Life and Accident Insurance. Co.*, 688 F.3d 197, 199 (5th Cir. 2012); *see also, Harris v. Transamerica Life Insurance Co.*533 F.Supp.2d 696, 701 - 702 (W.D. Tex. 2013)(mem.op.).  An unambiguous insurance contract will be interpreted and enforced as written. *Likens,* 688 F.3d at 199.  An insurance contract is unambiguous when it has a definite or certain legal meaning. *Grain Dealers Mutual Insurance Co. v. McKee*, 943 S.W.2d 455, 457 - 458 (Tex. 1997)(where insureds under corporation's policy were identified as "you," a "family member" or "designated person," daughter of individual owner who was not listed as a "designated person" was not an insured since clear meaning of terms of the policy meant she could not be a family member  and was not the insured "you.")

Where the insurance company is not relying upon an exclusion but is instead simply denying that the claim was covered, "the insured must prove that its claim falls within the insuring agreement of the policy." *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909, 911 (5th Cir.1997); *Crose.,* 823 F.3d at 348.  As the movant in this case, AFLAC has the initial duty to inform the court of the basis upon which it bases its motion for summary judgment

and to and identify "those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Arredondo v. Hartford Life and Accident Insurance Co.,* 860 F.Supp.2d 363 (S.D. Tex. 2012), *citing, Celotex Corp.,* 477 U.S. at 323.  The burden then shifts to the nonmoving party to provide specific evidence of existence of a genuine issue of material fact. *Id.*

Thus, under Texas contract law, AFLAC is entitled to summary judgment where the Policies' language unambiguously do not provide for coverage and Plaintiff cannot present a genuine issue of material fact to dispute that the unambiguous language is part of each Policy. Again, each Policy's clear and unambiguous language indicates that the only insured on each Policy was Plaintiff Ana Murillo herself and not her husband Jorge Murillo, for whose death she made her claims.  The same summary judgment evidence demonstrating that AFLAC properly denied the claims under the Policies demonstrates that ALFAC did not breach the insurance contract as a matter of law by refusing to pay benefits in this case.

There is also a second reason that AFLAC is entitled to summary judgment in its favor on the claims arising under Policy PW960794, at least.  The undisputed summary judgment evidence shows that Plaintiff did not obtain that Policy until September 2010, even though her husband has been declared legally deceased as of September of 2009, based in part upon Plaintiff's own sworn testimony as to the circumstances that led her to conclude he had been dead shortly after going missing on September 11, 2009.  A party cannot obtain valid life insurance coverage on a person who was deceased. *Cox v. Pyramid Life Insurance Co.,* 150 S.W.2d 819 (Tex. Civ. App. – Dallas 1941, writ ref'd.); *see also, Brachett v. Universal Life Insurance Co.,* 488 S.W.2d 584, 585 (Tex. Civ. App. – Beaumont 1972, no writ))(parties agreed that "only issue" for review was whether application had been accepted by someone with

authority before insured's death)

**C. Even if Plaintiff's extra-contractual claims were permitted and not preempted under ERISA, AFLAC should receive complete summary judgment, because it had a reasonable reason to deny Plaintiff's claims as a matter of law.**

None of Plaintiff's extra-contractual claims (common law fraud, violations of the Texas Insurance Code, negligence) can be maintained, where, as here, the insurer denied claims for which there was no coverage, or where the insurer clearly had a reasonable basis for denial. *Arredondo*, 860 F.Supp. at 371; *Bates v. Jackson National Life Insurance Co.*, 927 F.Supp. 1015, 1027 (S.D. Tex. 1996) ("As long as there exists a reasonable basis for the insurer to deny the insured's claim, the insurer does not violate any provision of [Texas Insurance Code] Article 21.21-2.") The undisputable summary judgment evidence is that AFLAC denied Plaintiff's claims based upon the clear language of the written policies reflecting that only individual Plaintiff Ana Murillo was insured, and her deceased husband was not. AFLAC is thus entitled to summary judgment on all causes of action.

## IV.
## CONCLUSION AND PRAYER

The unambiguous language of the AFLAC Policies at issue was that the life insurance purchased in those Policies covered only the possible death of Ana Murillo, not that of her spouse Jorge Murillo. Plaintiff thus has no valid claims for breach of contract or for benefits under the Policies. Plaintiff's extra-contractual claims are barred, because they are pre-empted by ERISA in this case. In any event, the summary judgment record shows that a denial of benefits is and was reasonable, given the overall lack of overage for the claims that AFLAC denied. AFLAC is thus entitled to summary judgment on the entire case against it.

WHEREFORE, AMERICAN FAMILY LIFE ASSURANCE COMPANY OF COLUMBUS requests that its Motion for Summary Judgment be GRANTED, and that such other and further relief, at law or in equity, to which it may show itself to be justly entitled to receive.

Respectfully submitted,

/s/ Alison D. Kennamer
          Jaime A. Saenz
Texas Bar No. 17514859
          Alison D. Kennamer
Texas Bar No. 11280400
COLVIN, CHANEY, SAENZ & RODRIGUEZ, L.L.P.
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170


ATTORNEYS FOR AMERICAN FAMILY LIFE
ASSURANCE COMPANY OF COLUMBUS

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record, to-wit:

> Denis A. Downey
> Email:  algoasi@att.net
> 1185 F.M. 802, Suite 3
> Brownsville, Texas  78526
> (956) 544-0561
> *Attorneys for Plaintiff*

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Federal Rules of Civil Procedure on this the <u>6th</u> day of February, 2017.

*/s/ Alison D. Kennamer*
Alison D. Kennamer
