Case 1:16-cv-00049 Document 26-3 Filed in TXSD on 02/06/17 Page 1 of 7

Garza v. Sun Life Assur. Co. of Canada, Not Reported in F.Supp.2d (2013)
57 Employee Benefits Cas. 1549

2013 WL 1816989
United States District Court,
S.D. Texas,
McAllen Division.

Cynthia Getner GARZA, Plaintiff,
v.
SUN LIFE ASSURANCE COMPANY
OF CANADA, Defendant.

Civil Action No. 7:12–CV–188.
|
April 29, 2013.

**Attorneys and Law Firms**

Adrian R. Martinez, Alberto Tovar Garcia, III, Garcia and Martinez LLP, Edinburg, TX, for Plaintiff.

Andrew Fairles MaCrae, Attorney at Law, Austin, TX, Byrne J. Decker, Pierce Atwood LLP, Portland, ME, for Defendant.

*ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT*

RANDY CRANE, District Judge.

### I. Factual Background

*1 Now before the Court are Plaintiff Cynthia Getner Garza's Motion for Summary Judgment (Doc. 23) and Defendant Sun Life Assurance Company of Canada's Motion for Summary Judgment (Doc. 24). Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") to recover accidental death benefits under a group insurance policy issued by Defendant Sun Life to the employer of Plaintiff's deceased husband, Raul Garza, Jr. (Doc. 21); *see* 29 U.S.C. § 1132(a)(1)(B) (authorizing beneficiary to bring federal civil action to recover benefits due under ERISA plan). The insured, Mr. Garza, was allergic to wasp venom and died on October 16, 2011 shortly after being stung by a wasp. Sun Life paid life insurance benefits to Plaintiff under the policy but denied her claim for accidental death benefits, determining that Mr. Garza's death was excluded from coverage because it constituted a "loss which is due to or results from: ... bodily ... infirmity or disease." Through their Cross–Motions for Summary Judgment, the parties seek the Court's resolution of their coverage dispute. Upon review of the Cross–Motions, responsive briefing, and summary judgment evidence, in light of the relevant law, the Court finds that Plaintiff's Motion must be denied and that Defendant's Motion must be granted, for the following reasons. *See* (Docs.23, 24, 26, 27, 29).

### II. Overview of Summary Judgment Standard of Review in ERISA Case

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). District courts within this Circuit have described the summary judgment standard of review in ERISA cases as "unique," in that the court acts in an appellate capacity reviewing the decisions of the ERISA plan administrator. *E.g., McFadden v. Prudential Ins. Co. of Am.,* 877 F.Supp.2d 481, 485 (S.D.Miss.2012). As a general rule, the court is "limited to the administrative record and may inquire only whether the record adequately supports the administrator's decision." *Jenkins v. Cleco Power, LLC,* 487 F.3d 309, 314 (5th Cir.2007) (quoting *Gooden v. Provident Life & Accident Ins. Co.,* 250 F.3d 329, 333 (5th Cir.2001)) (internal quotations omitted); *see also Estate of Bratton v. Nat'l Union Fire Ins. Co.,* 215 F.3d 516, 521 (5th Cir.2000).

The plan administrator makes two general determinations when deciding a claimant's entitlement to benefits: "(1) finding the facts underlying the claim and (2) determining 'whether those facts constitute a claim to be honored under the *terms* of the plan.'" *Firman v. Life Ins. Co. of N. Am.,* 684 F.3d 533, 538 (5th Cir.2012) (quoting *Schadler v. Anthem Life Ins. Co.,* 147 F.3d 388, 394 (5th Cir.1998)) (emphasis in original). Courts always review the administrator's fact findings for abuse of discretion. *Id.* at 538. The administrator's interpretation of the plan "is typically reviewed *de novo,* '[b]ut where ... a plan expressly confers discretion on the plan administrator to construe the plan's terms, the administrator's construction is reviewed for abuse of discretion." *Id.* (quoting *Wade v. Hewlett–Packard Dev. Co. LP Short Term Disability Plan,* 493 F.3d 533, 537–38 (5th Cir.2007)); *see also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).



Case 1:16-cv-00049 Document 26-3 Filed in TXSD on 02/06/17 Page 2 of 7

Garza v. Sun Life Assur. Co. of Canada, Not Reported in F.Supp.2d (2013)
57 Employee Benefits Cas. 1549

## III. Summary Judgment Evidence

### A. The Policy

*2 At the time of his death, Mr. Garza was employed as the Facilities Director for Laredo Medical Center and was insured under Policy Number 10471–001 (the "Policy") issued by Sun Life to CHS/Community Health Systems, Inc. (Doc. 23, Ex. 1; AR at 1).[1] Mr. Garza designated Plaintiff as the sole beneficiary under the Policy. (AR at 8). The "Accidental Death and Dismemberment Insurance" provisions of the Policy state that "[i]f Sun Life receives Notice and Proof of Claim that an Insured Person ... sustains an Accidental Bodily Injury while insured, which results in loss of life, ... Sun Life will pay [benefits], subject to the Exclusions...." (AR at 431). The Policy defines "Accidental Bodily Injury" as "bodily harm caused by an accident which is sustained directly and independently of all other causes." (AR at 418). The "Exclusions" provide that "no Accidental Death ... payment will be made for a loss which is due to or results from: ... bodily or mental infirmity or disease of any kind, or infection unless due to an accidental cut or wound." (AR at 436).

### B. Mr. Garza's Death

On October 16, 2011 at approximately 12:30 pm, Mr. Garza was driving his motorcycle on Texas Highway 100 when he pulled over to the side of the highway. (AR at 201, 133–34). Plaintiff had been following in her truck and also pulled over to check on her husband. *Id.* Mr. Garza told Plaintiff that he had been stung on the left leg by a wasp. (AR at 201). Both were aware that Mr. Garza was allergic to wasp venom. (AR at 205, 272). Either Mr. Garza or Plaintiff administered an "EpiPen" to Mr. Garza to counter the effects of the wasp sting. (AR at 134, 201, 272). Mr. Garza began to have trouble breathing and became increasingly unresponsive. (AR at 201). Plaintiff called 9–1–1 and began to administer cardio-pulmonary resuscitation ("CPR") until Emergency Medical Services ("EMS") arrived. *Id.*

The EMS report notes that Mr. Garza went into full cardiac arrest and lists the "suspected illness" as "allergic reaction" and "bee sting." (AR at 135). EMS personnel injected several doses of epinephrine, the medication also contained in the EpiPen, to counteract the allergic reaction. (AR at 136). EMS transported Mr. Garza to Valley Regional Medical Center where he was pronounced dead at 1:48 pm after life-saving measures were unsuccessful. (AR at 4, 133–34, 201).

Mr. Garza's autopsy report and death certificate both state that he had a "history of hymenoptera allergy" (*i.e.,* allergy to the venom of insects belonging to the order hymenoptera, including wasps),[2] and that the cause of his death was "anaphylaxis due to hymenoptera envenomation." (Doc. 23, Ex. B; AR at 4, 146). The autopsy showed that Mr. Garza's blood contained a moderate level of paper wasp venom. (AR at 146, 151).

### C. Denial of Plaintiff's Claim and Appeal

In November 2011, Plaintiff filed a claim with Sun Life to recover life insurance and accidental death (hereinafter "AD") benefits under Mr. Garza's Policy. (AR at 1–2). In December 2011, Sun Life paid life insurance proceeds to Plaintiff and notified her that it would be requesting and reviewing "all police or governmental investigation or other accidental reports and any toxicology or laboratory reports" prior to rendering a decision on her AD claim. (AR at 27, 31). Sun Life assigned the AD claim to Senior Benefits Consultant John Baptista, who hired third-party investigator Claims Bureau USA, Inc. to obtain copies of the police, EMS, autopsy, and toxicology reports. (AR at 121, 186, 220, 349). Mr. Baptista reviewed this information in determining whether Mr. Garza's death was covered under the AD provisions of the Policy. *See* (Doc. 23, Ex. C; AR at 123–25). In a letter dated February 13, 2012, Mr. Baptista informed Plaintiff of Sun Life's denial of her AD claim on two grounds. *Id.* First, Mr. Garza's death was not "caused by an accident which is sustained directly and independently of all other causes," in that his hymenoptera allergy "was a known, pre-existing condition that made him susceptible to the reaction he sustained following the wasp sting." (AR at 124). Second, even if an accident, Mr. Garza's death was excluded from coverage because his allergy was a "bodily infirmity or disease." *Id.* In support of the latter finding, Mr. Baptista cited to a page of a publication by the U.S. Department of Health and Human Services ("HHS"), National Institute of Allergy and Infectious Diseases, entitled "Understanding the Immune System: How It Works." *Id.* That page contains the following paragraph under the heading "Disorders of the Immune System":

*3 **Allergic Diseases**

> The most common types of allergic diseases occur when the immune system responds to a false alarm. In an allergic person, a normally harmless material such as grass pollen or house dust is mistaken for a threat and attacked.

(Doc. 23, Ex. F; AR at 76). Mr. Baptista explained that "Mr. Garza died from anaphylaxis, which was due to or resulted from his allergy. If his allergy were not present, the wasp sting would not have resulted in his death." (AR at 124).

In April 2012, represented by counsel, Plaintiff appealed Sun Life's decision on two bases. (Doc. 23, Ex. D; AR at 108). First, Plaintiff took the position that Mr. Garza died not because of a pre-existing allergy but "because the EpiPen injection he administered to himself failed." *Id.* Second, Plaintiff pointed to the fact that another insurer had paid accidental death benefits to Plaintiff "when it had the same benefit data [Sun Life] had." *Id.* Plaintiff enclosed copies of correspondence verifying such payment, but not copies of the underlying decision or policy. *See* (AR at 110–12).

By letter dated June 6, 2012, Sun Life Benefits Consultant Morse W. Doane upheld Sun Life's denial of Plaintiff's AD claim. (Doc. 23, Ex. E; AR at 36–39). Mr. Doane rejected Sun Life's first basis for its original denial, clarifying that the test was not whether Mr. Garza's *death* was "caused by an accident which is sustained directly and independently all other causes," but whether Mr. Garza sustained an "Accidental Bodily Injury" resulting in loss of life. (AR at 36–37). Mr. Doane reasoned that Mr. Garza did sustain an "Accidental Bodily Injury" as defined by the Policy because he "experienced 'bodily harm'—a wasp sting—'caused by an accident'—getting stung by a wasp while riding a motorcycle—which was 'sustained directly and independently of all other causes.' " (AR at 37). In short, "nothing else happened to contribute to the wasp sting" resulting in Mr. Garza's death. *Id.*

Regarding the second basis for Sun Life's denial of Plaintiff's AD claim, Mr. Doane found that "the proof supports that Sun Life's decision regarding the application of the Exclusion was correct." *Id.* Relying on the previous record, a page of an article on the diagnosis of hymenoptera allergies, and a page of an article on "epinephrine autoinjectors" such as the EpiPen, Mr. Doane explained as follows:

Because Mr. Garza had a known hymenoptera allergy,[3] and because he died of anaphylaxis due to hymenoptera envenomation ..., it appears that Mr. Garza's reaction to the wasp sting was more severe than the reaction would have been for a person who did not have a hymenoptera allergy. It also appears that Mr. Garza and his wife knew that he was at risk of having such a severe reaction because they kept an EpiPen[4] with them and because one of them administered the EpiPen shortly after Mr. Garza was stung. Therefore, it appears that Mr. and Mrs. Garza were both aware of the "bodily ... infirmity or disease" that Mr. Garza had—the hymenoptera allergy—and that Mr. Garza's loss of life was "due to or result[ed] from" that "bodily infirmity or disease." In other words, Mr. Garza was stung by a wasp, he had a severe allergic reaction to the wasp venom, and he lost his life because of the "bodily infirmity or disease"—the hymenoptera allergy.

*4 (AR at 38; *see also* AR at 40, 41). In sum, "[w]hile Mr. Garza did sustain an Accidental Bodily Injury, no AD benefits are payable because Mr. Garza's loss was due to a 'bodily ... infirmity or disease' and the policy excludes payment of benefits under such circumstances." (AR at 38).

Addressing Plaintiff's argument that Mr. Garza died not because of his allergy but because the EpiPen had failed, Mr. Doane explained that he had no evidence indicating whether the EpiPen failed, worked as intended but was not "enough of a remedy to save Mr. Garza's life," or was administered improperly or too late. *Id.* In any event, although "[t]he administration of the EpiPen failed to *save* Mr. Garza's life, ... it was not the cause of his death"; rather, "the Accidental Bodily Injury (the wasp sting) triggered a severe allergic reaction because Mr. Garza had a hymenoptera allergy (a 'bodily ... infirmity or disease'), and Mr. Garza died from 'anaphylaxis due to hymenoptera envenomation .' " *Id.* (emphasis in original). Regarding Plaintiff's second basis for appealing Sun Life's denial, Mr. Doane explained that "the decision by a different insurance company based on its own analysis of the facts as applied to the terms of its policy has no bearing on [Plaintiff's] claim under this Sun Life policy." *Id.*

### IV. Parties' Cross–Motions for Summary Judgment

#### A. Overview of Issues Presented to this Court

In this action under ERISA, Plaintiff does not challenge Sun Life's rejection of her specific arguments on appeal or its determination that Mr. Garza's death was "due to or resulted from" his hymenoptera allergy. Rather, this case and the parties' Cross–Motions present the following issues for determination by this Court: (1) whether Sun Life abused its discretion in making the factual determination that Mr. Garza's hymenoptera allergy was a "disease";[5] and (2) if Mr. Garza's allergy was a "disease," whether the "accidental cut or wound" exception to the disease exclusion applies to bring the loss within coverage. *See* (Docs.21, 23, 24, 26, 27, 29).

### B. Whether Sun Life Abused Its Discretion in Making Factual Determination that Mr. Garza's Hymenoptera Allergy Was a "Disease"

Noting that Sun Life has argued only that Mr. Garza's hymenoptera allergy was a "disease," and not an "infirmity," Plaintiff first challenges this "factual" determination as an abuse of discretion. (Docs.23, 27). "In the ERISA context, '[a]buse of discretion review is synonymous with arbitrary and capricious review.' " *E.g., Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan,* 694 F.3d 557, 566 (5th Cir.2012) (quoting *Cooper v. Hewlett–Packard Co.,* 592 F.3d 645, 652 (5th Cir.2009)). "This standard requires only that substantial evidence supports the plan fiduciary's decision." *Atkins,* 694 F.3d at 566. "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Ellis v. Liberty Life Assur. Co. of Boston,* 394 F.3d 262, 273 (5th Cir.2004)). " 'A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence.' " *Id.* (quoting *Holland v. Int'l Paper Co. Ret. Plan,* 576 F.3d 240, 246 (5th Cir.2009)). A court's " 'review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end.' " *Id.* (quoting *Corry v. Liberty Life Assur. Co. of Boston,* 499 F.3d 389, 398 (5th Cir.2007)). Finally, although the court must consider "the conflict of interest inherent in a benefits system in which the entity that pays the benefits ... maintains discretionary control over the ultimate benefits decision," the presence of this "structural conflict" does not result in a heightened standard of review and is weighed as "one of the many factors relevant to the benefits determination decision." *E.g., Anderson v. Cytec Indus., Inc.,* 619 F.3d 505, 512 (5th Cir.2010).

**\*5** Plaintiff's Motion argues that Sun Life acted arbitrarily and capriciously when it concluded that Mr. Garza's hymenoptera allergy was a disease by relying "solely" on a single page of one HHS publication that makes no reference to hymenoptera allergies, does not state that a hymenoptera allergy or any other allergy is a disease, and does not define the term disease. (Doc. 23). Plaintiff also points to another page of that publication defining "allergy" as "a harmful response of the immune system to normally harmless substances" and "allergen" as "any substance that causes an allergy." (Doc. 27) (citing AR at 95). Plaintiff suggests that Sun Life's reliance on the HHS report, "coupled with its conflict of interest," demonstrates that it abused its discretion in determining that a harmful response caused by an allergen is a disease. (Doc. 23; *see also* Doc. 27). The Court rejects Plaintiff's arguments, first because the record indicates that Sun Life did not rely only on the HHS report. Mr. Baptista also noted that Mr. Garza's autopsy report and death certificate revealed a history of hymenoptera allergy, described by Mr. Baptista as "a systemic reaction to insect stings causing serious allergic reaction that occurs rapidly and causes a life threatening response from the body, including difficulty breathing and shock." (Doc. 23, Ex. C; AR at 123). Notably, Plaintiff's appeal did not challenge Mr. Baptista's determination, based on this evidence and the HHS report, that Mr. Garza's pre-existing allergy was a disease. *See* (Doc. 23, Ex. D; AR at 108). Even so, on appeal Mr. Doane cited to additional authority on diagnosing hymenoptera allergies and on epinephrine autoinjectors in upholding Mr. Baptista's determination. (Doc. 23, Ex. E; AR at 38, 40, 41). The first of these articles states that the diagnosis of hymenoptera allergy "is based upon the clinical history and testing for the presence of venom-specific IgE antibodies," and that "[a]ccurate diagnosis of venom allergy is important because patients with venom allergy are candidates for venom immunotherapy, a treatment which can dramatically reduce the risk of recurrent severe reactions." (AR at 40). The article further explains that venom introduced into a person with a hymenoptera allergy can lead to "severe systemic reactions (*i.e.,* anaphylaxis)," and that "[v]enom-induced anaphylaxis can be particularly severe and is a leading cause of fatal anaphylaxis." *Id.* The second article identifies the EpiPen as a type of epinephrine autoinjector,

defined as "a medical device used to deliver a measured dose (or doses) of epinephrine ..., most frequently for the treatment of acute allergic reactions to avoid or treat the onset of anaphylactic shock ." (AR at 41). In sum, the record considered by Sun Life shows that Mr. Garza had a history of hymenoptera allergy, was diagnosed with and treated for this allergy, and carried and was administered the EpiPen to counter the kind of "severe systemic reactions" that can occur in persons with this allergy, and that resulted in Mr. Garza's death.

**\*6** Plaintiff's response attempts to discredit all of the authority on which Sun Life relied by pointing to the absence of any explicit statement that a hymenoptera allergy (again, defined by Plaintiff as the allergic response itself) is a disease. (Doc. 27). No such explicit statement is required, and in any event, the record considered by Sun Life reasonably allows for that conclusion. Although the HHS report does not reference hymenoptera allergies or state that "an allergy is a disease," it describes the immune system's response to a false alarm as an "allergic disease," denoted as a subset of "disorders of the immune system." The record is undisputed that Mr. Garza's immune system responded harmfully to the wasp venom on the date of his death, and therefore Sun Life did not abuse its discretion in determining that he suffered from a disease on that date. *See Hall v. Metro. Life Ins. Co.,* 2007 WL 4553952, at ——6 (4th Cir.2007) (noting that same HHS publication "supports the view that an allergy is a disease...."). [6] Moreover, the record on which Sun Life relied also reasonably permits the conclusion that Mr. Garza's hymenoptera allergy was not a single event (*i.e.,* the allergic response on the date of his death), but a pre-existing condition; it is no less an "allergic disease" due to this fact. In sum, the Court finds that Sun Life relied on "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion" that Mr. Garza's hymenoptera allergy was a disease; at the very least, its determination fell on "the low end" of reasonableness. Further, although the Court recognizes the inherent conflict of interest present in Sun Life's determination of Plaintiff's AD claim, no evidence exists that would persuade the Court to give this factor substantial weight. The Court therefore concludes that Sun Life did not abuse its discretion in making the factual determination that Mr. Garza's hymenoptera allergy was a disease, and must enter summary judgment in Sun Life's favor on this issue.

### C. Whether "Accidental Cut or Wound" Exception to Disease Exclusion Applies

To address Plaintiff's alternative argument that an exception to the exclusion applies to bring Mr. Garza's death within coverage, the subject Policy language bears repeating:

> [N]o Accidental Death ... payment will be made for a loss which is due to or results from: ... bodily or mental infirmity or disease of any kind, or infection unless due to an accidental cut or wound.

(AR at 436). Plaintiff contends that the language "unless due to an accidental cut or wound" modifies "infirmity or disease," that the wasp sting was an "accidental cut or wound," and that Mr. Garza's "disease" (his allergic response) was "due to" that "cut or wound." (Docs.23, 27). Therefore, the exception triggers coverage for Plaintiff's AD claim. *Id.* The parties devote substantial briefing to the issue of whether the Court should review Sun Life's application of the disease exclusion for abuse of discretion or under a *de novo* standard of review. (Docs.23, 24, 26, 27). However, the Court need not address this issue, as it finds that Plaintiff failed to exhaust her administrative remedies on her challenge to Sun Life's failure to apply the "cut or wound" exception. Further, even if she had raised this issue during the administrative process, Plaintiff's grammatical reading of the exception is not a reasonable one, and therefore Sun Life's failure to apply the exception withstands any standard of review.

**\*7** The Fifth Circuit requires that claimants seeking ERISA benefits first exhaust available administrative remedies before bringing suit in federal court, and in an unpublished decision, extended the exhaustion rule to "issues" not raised before the plan administrator. *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.,* 215 F.3d 475, 479 (5th Cir.2000); *see Harris v. Trustmark Nat'l Bank,* 2008 WL 2482348, at ——4 (5th Cir. June 20, 2008). *Harris* directed that where a plaintiff has failed to raise an issue, "a federal court should not address the issue because it does not have the opportunity to review the plan administrator's resolution of the issue under an arbitrary and capricious standard." *Id.; accord N. Cypress Med. Ctr. Operating Co., Ltd. v. Principal Life Ins. Co.,* 2012 WL 434043, at \*4 (S.D.Tex. Feb.9, 2012). Plaintiff responds, in a footnote, by citing to the

Third Circuit position that ERISA requires only claim exhaustion and not issue or theory exhaustion, but *Harris* declined to follow this view. (Doc. 27) (citing *Wolf v. Nat'l Shopmen Pension Fund,* 728 F.2d 182, 186 (3d Cir.1984)); *see Harris,* 2008 WL 2482348, at ——4 (declining to follow *Jordan v. Fed. Express Corp.,* 914 F.Supp. 1180, 1189 (W.D.Pa.1996), *aff'd in part, rev'd in part on other grounds,* 116 F.3d 1005 (3d Cir.1997)). Plaintiff also argues that *Harris* has no application where the court reviews a plan administrator's decision *de novo,* but even assuming that this is the proper standard of review here, applying the ERISA exhaustion requirement still advances the purposes underlying it. *See Hall v. Nat'l Gypsum Co.,* 105 F.3d 225, 231 (5th Cir.1997) (purposes of exhaustion include "minimizing the number of frivolous ERISA suits, promoting the consistent treatment of benefit claims, providing a nonadversarial dispute resolution process, and decreasing the time and cost of claims settlement"). In sum, the Court finds that Plaintiff's failure to raise the issue of the "cut or wound" exception during the administrative process prevents her from raising it here.

Out of an abundance of caution, the Court also finds that even were it allowed to consider the "cut or wound" issue and construe the exception *de novo,* it cannot interpret the language in the manner urged by Plaintiff. Relying primarily on *Elliot Coal Mining Co., Inc. v. Director, Office of Workers' Compensation Programs,* 17 F.3d 616 (3d Cir.1994), Plaintiff argues that the presence of a comma between "infirmity or disease of any kind" and "or infection unless due to an accidental cut or wound" indicates that the qualifying language modifies infirmity, disease, and infection. (Doc. 23). The language interpreted by the Third Circuit in *Elliot Coal* was a statutory definition of "operator" as "any owner, lessee, or other person who operates, controls, or supervises a coal or other mine...." *Elliot Coal,* 17 F.3d at 629 (quoting 30 U.S.C. § 802(d) (1986)). The Third Circuit recognized that under the "last antecedent" doctrine, " 'qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote,' " but concluded that this doctrine did not apply in the case before it. *Id.* (quoting *Azure v. Morton,* 514 F.2d 897, 900 (9th Cir.1975)). The court found significant the fact that "owner," "lessee," and "or other person" were *all* separated by commas; reasoning that "it is the absence of a comma ... before the coordinate conjunction 'or' that would indicate it and its modifier ... are to be treated separately rather than as part of the whole series," "[c]onversely, the presence of a comma before the last clause ... suggests that the limiting clause applies to the entire series." *Id.* at 630. In other words, had the language at issue here read, "infirmity[,] or disease of any kind, or infection unless due to an accidental cut or wound," *Elliot Coal* would lend support to Plaintiff's position. The Court can discern no reason, grammatical or otherwise, why the last antecedent rule does not apply in the case before it; the presence of a single comma between "infirmity or disease of any kind" and "infection unless due to an accidental cut or wound" indicates that the modifying language applies only to "infection." *See Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.,* 509 F.3d 216, 223 (5th Cir.2007) (quoting *Barnhart v. Thomas,* 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)) (under last antecedent rule, " 'a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows' "); *Johnson v. Manpower Prof'l Servs., Inc.,* 2011 WL 4584757, at ——6 (5th Cir. Oct.5, 2011) (applying last antecedent rule to contract language). In other words, what the qualifying language modifies is unambiguous, and therefore the Court need not construe the exclusion and its exception as Plaintiff urges. *See Keszenheimer v. Reliance Standard Life Ins. Co.,* 402 F.3d 504, 507 (5th Cir.2005) (under *de novo* standard of review, court construes plan terms strictly in favor of insured only if terms remain ambiguous after application of ordinary principles of contract interpretation). For these reasons, the Court must enter summary judgment for Sun Life on the issue of whether the "cut or wound" exception to the exclusion applies.

### V. Conclusion

*8 For the foregoing reasons, the Court finds that Sun Life's denial of Plaintiff's AD claim withstands review. Accordingly, the Court hereby **ORDERS** that Plaintiff's Motion for Summary Judgment (Doc. 23) is **DENIED** and Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED.**

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1816989, 57 Employee Benefits Cas. 1549

Case 1:16-cv-00049 Document 26-3 Filed in TXSD on 02/06/17 Page 7 of 7
**Garza v. Sun Life Assur. Co. of Canada, Not Reported in F.Supp.2d (2013)**
57 Employee Benefits Cas. 1549

## Footnotes

1 "AR" denotes citation to the Administrative Record produced by Sun Life. *See* (Doc. 24, Ex. 2).
2 *See* (AR at 40).
3 Citing to the article on diagnosing hymenoptera allergies, Mr. Doane described Mr. Garza's allergy as "an allergy to honey bees, wasps, fire ants, etc." (AR at 38, 40).
4 Citing to the article on epinephrine autoinjectors, Mr. Doane defined the EpiPen as "an emergency medical remedy typically carried by individuals known to be at risk for anaphylactic shock." (AR at 38, 41).
5 As the Policy does not define the term "disease," it appears that Plaintiff is only challenging Sun Life's interpretation of that term as a factual determination subject to an abuse of discretion standard of review.
6 The Court recognizes, as Plaintiff points out, that *Hall* relied on additional evidence in concluding that the insured's bee sting allergy was a disease, but the fact that additional evidence *corroborated* the HHS report does nothing to invalidate Sun Life's reliance on the report itself. (Doc. 27); *see Hall,* 2007 WL 4553952, at ——6.

**End of Document** © 2017 Thomson Reuters. No claim to original U.S. Government Works.