United States District Court
Southern District of Texas
**ENTERED**
March 22, 2017
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | |
|---|---|
| ANA MURILLO, § | |
|     Plaintiff, § | |
| § | |
| v. § | Civil Action No. 1:16-49 |
| § | |
| RELIANCE STANDARD LIFE § | |
| INSURANCE CO.; DENISE PHILLIPS, § | |
| AMERICAN FAMILY LIFE INSURANCE, § | |
|     Defendants. § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Ana Murillo ("Murillo") brought this civil action against Reliance Standard Life Insurance Company, Denise Phillips ("Phillips")[1], and American Family Life Insurance ("AFLAC") in the 107th District Court in Cameron County, Texas, under Case No. 2016-DCL-01139. Murillo asserted that she was denied the life insurance benefits due to her after her husband's death. On March 1, 2016, the instant case was removed to this Court. Dkt. No. 1.

On February 6, 2017, Defendant AFLAC filed a motion for summary judgment. Dkt. No. 26. Murillo has filed a response. Dkt. No. 27. The motion is currently pending before the Court.

After reviewing the record and the relevant case law, the Court recommends – for the reasons discussed below – that the motion for summary judgment be granted.

## I. Background

### A. Factual Background

Murillo worked as a certified nursing assistant at Spanish Meadows – a nursing and rehabilitation center ("Spanish Meadows") – located in Brownsville, Texas. Dkt. No. 26-2,

---

[1] Reliance Standard has since been dismissed as a defendant in this case. Dkt. No. 19. Phillips has never been served with process.

1

p. 26. During her employment, Spanish Meadows offered life insurance through AFLAC as an optional employee benefit. Id. On September 11, 2006, Murillo signed up for a life insurance policy ("Policy PH 649976"). Dkt. No. 26-2, pp. 26-27.

According to Murillo, when she signed up for the policy, she believed that she was signing up for a "family" policy that insured her life and her husband's life. Dkt. No. 30-1, p. 15. The process of applying for the insurance involved an AFLAC representative asking Murillo questions, and typing the responses into the computer. Id. Murillo testified that she was given an electronic "pin" pad to sign the application and that no one explained her coverages to her. Id. Murillo has a tenth grade education and her response states that she is "an unsophisticated person." Id., p. 4.

The policy, however, only insured Murillo. Dkt. No. 26-2, p. 26. In her completed application, Murillo was listed as the only person insured by the policy and her husband, Jorge Murillo ("Jorge"), was listed as the beneficiary. Id, p. 27.

On September 11, 2009, Jorge traveled to Mexico and never returned; he has not been seen or heard from since. Dkt. No. 26-2, pp. 129-130.

In September 2010 – almost exactly one year after Jorge was last seen – Murillo took out a life insurance policy from AFLAC, which, again, only insured Murillo's life. The coverage was set forth in Policy PW 960794 ("Policy 794" or "second policy"). Dkt. No. 26-2, p. 51. The first policy had an accidental death benefit of $40,000; the second policy had a maximum death benefit of $250,000. Dkt. No. 26-2, pp. 70, 82. It is not entirely clear from the record if the second policy replaced or merely supplemented the first policy.

On January 14, 2013, Murillo filed a petition with the Cameron County Court at Law No. 3 to have Jorge declared to be legally dead and to probate his estate. Dkt. No. 26-2, pp. 122-128. On February 11, 2014, Cameron County Court at Law No. 3 declared Jorge to be legally dead as of September 11, 2009, and authorized Murillo to probate his estate. Id., pp. 129-130. Pursuant to Texas law, the Court found that Jorge's death was "proved by

circumstantial evidence to the court's satisfaction." TEX. ESTATES CODE § 454.002.[2]

On June 22, 2015, Murillo, via counsel, sent a letter to the AFLAC claims department, seeking payment of the life insurance policy for Jorge under the second policy. Dkt. No. 26-2, p. 43. AFLAC denied the claim, on July 22, 2015, asserting that Jorge's life was not insured under the policy. Dkt. No. 26-1, p. 37.

In the complaint, Murillo claims to be entitled to $40,000 in accidental death benefits, as well as $150,000 in life insurance benefits pursuant to her spouse's coverage under the policy. Dkt. No. 1-1, p. 5.

### B. Procedural History

On February 15, 2016, Murillo sued AFLAC, Phillips, and Reliance Standard Life Insurance, in the 107th District Court in Cameron County, Texas. Dkt. No. 1-1, p. 3. As to AFLAC, Murillo made claims for common law fraud, breach of contract, unspecified violations of the Texas Insurance Code, negligence, and intentional infliction of mental anguish. Id.

On March 1, 2016, Reliance Standard timely removed the case to this Court. Dkt. No. 1. In the removal petition, Reliance Standard alleged that the claims raised by Murillo are governed and completely pre-empted by the Employee Retirement Income Security Act of 1974 ("ERISA"), and thus was removable to federal court. Id., p. 2. On March 22, 2016, AFLAC consented to removal. Dkt. No. 8.

On March 21, 2016, Murillo timely filed a motion to remand the case to state court. Dkt. No. 7. On August 10, 2016, the undersigned issued a report and recommendation, recommending that the motion to remand be denied. Dkt. No. 23. The report and recommendation specifically found that all of Murillo's state law claims were pre-empted by ERISA, creating subject matter jurisdiction in this Court. Id, p. 10.

On September 14, 2016, the District Judge adopted the report and recommendation

---

[2] The Court notes that the state court had "jurisdiction to determine the fact, time, and place" of Jorge's death. TEX. ESTATES CODE § 454.001.

in full. Dkt. No. 24.

On February 6, 2017, AFLAC filed a motion for summary judgment, asserting that under the ERISA standard of review, there is no genuine dispute of material fact that the denial of the life insurance claim was "legally correct." Dkt. No. 26.

On February 27, 2017, Murillo filed a response. Dkt. No. 27. In her response, Murillo argues that there is a genuine issue of material fact as to whether Murillo had intended to purchase life insurance for Jorge and whether she believed she had done so. Id.

On March 9, 2017, AFLAC filed a reply brief. Dkt. No. 29.

## II. Applicable Law

### A. Summary Judgment

Summary judgment is appropriate when the moving party has established that the pleadings, depositions, answers to interrogatories, admissions, and affidavits – if any – demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue is "real and substantial, as opposed to merely formal, pretended, or a sham." Bazan v. Hidalgo Cnty., 246 F.3d 481, 489 (5th Cir. 2001). A material fact is one that might influence the outcome of the suit. Id. Accordingly, a "genuine issue of material fact exists where evidence is such that a reasonable jury could return a verdict for the non-movant." Piazza's Seafood World, L.L.C. v. Odom, 448 F.3d 744, 752 (5th Cir. 2006).

If "the nonmoving party will bear the burden of proof at trial on a dispositive issue," then "a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." Norwegian Bulk Transport A/S v. International Marine Terminals

Partnership, 520 F.3d 409, 412 (5th Cir. 2008). The burden then shifts to the nonmoving party, who must – by submitting or referring to evidence – set out specific facts showing that a genuine issue exists. Id.

Additionally, the Court must review all evidence in the light most favorable to the non-moving party. Piazza's Seafood World, 448 F.3d at 752. Factual controversies must be resolved in favor of the non-moving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Murungi v. Xavier Univ. of La., 313 Fed. App'x. 686, 688 (5th Cir. 2008) (unpubl.) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)). Thus, "in the absence of proof," the court cannot "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F.3d at 1075. Finally, "a court should not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment." Chacon v. Copeland, 577 Fed. App'x. 355, 360 (5th Cir. 2014) (unpubl.) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)) (internal quotations omitted).

### B. ERISA

Congress enacted ERISA as a statutory scheme "to protect employees' rights to benefits while also encouraging employers to develop employee benefit programs." Martinez v. Schlumberger, Ltd., 338 F.3d 407 (5th Cir. 2003). ERISA applies to any employee benefit plan established or maintained by an employer or an employee organization in commerce or in any industry or activity affecting commerce. See 29 U.S.C. § 1003(a). If a plaintiff's complaint concerns an ERISA plan, then any state law claims are pre-empted by ERISA. Lone Star OB/GYN Associates v. Aetna Health Inc., 579 F.3d 525, 529 (5th Cir. 2009); Giles v. NYLCare Health Plans, 172 F.3d 332, 337 (5th Cir. 1997).

As a result, "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Davila, 542 U.S. 200, 209 (2004).

In reviewing denial of an insured's claim under ERISA, there are several standards

5

of review, depending upon the nature of the decision. In reviewing factual determinations made by the administrator[3], the Court reviews those determinations under an "abuse of discretion" standard. Pierre v. Connecticut Gen. Life Ins. Co./Life Ins. Co. of N. Am., 932 F.2d 1552, 1562 (5th Cir. 1991). Under this standard, the Court determines whether the administrator's factual finding was arbitrary or capricious. Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 214 (5th Cir.1999). "A decision is arbitrary and capricious only if it is 'made without a rational connection between the known facts and the decision or between the found facts and the decision.' " Truitt v. Unum Life Ins. Co. of Am., 729 F.3d 497, 508 (5th Cir. 2013).

In reviewing the administrator's interpretation of the plan's terms or eligibility for benefits, the Court reviews the decision under a de novo standard. Green v. Life Ins. Co. of N. Am., 754 F.3d 324, 329 (5th Cir. 2014). An exception to that standard exists if the plan "gives the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms, [in such cases] we review a decision to deny benefits only for abuse of discretion." Id. In this case, there is no evidence in the record giving the plan administrator such discretion. For that reason, the denial of benefits will be reviewed under a de novo standard.

"Federal common law governs rights and obligations stemming from ERISA-regulated plans, including the interpretation of policy provisions." Green v. Life Ins. Co. of N. Am., 754 F.3d 324, 331 (5th Cir. 2014). The contractual language must be interpreted "in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one." Wegner v. Standard Ins. Co., 129 F.3d 814, 818 (5th Cir. 1997) (internal quotations omitted).

---

[3] In this case, the administrator is not defined within the policy documents. For purposes of resolving this motion for summary judgment, the Court will assume, without deciding, that AFLAC is the plan administrator. Because the Court employs the standard that is most favorable to the plaintiff, the identity of the administrator would not change the analysis or outcome.

**III. Analysis**

In resolving the motion for summary judgment, the Court must first determine if ERISA pre-empts Murillo's state law claims. After concluding that it does, the Court turns to whether AFLAC's decision to deny benefits on either claim survives de novo review. The Court finds that AFLAC's decision survives such review; for that reason summary judgment is appropriate.

**A. ERISA Plan**

In previously resolving the motion to remand, the Court concluded that the insurance policies in this case were ERISA plans. Dkt. Nos. 23, 24. There has been no evidence added to the record, that would alter the Court's prior conclusion. Murillo admits that the issue has already been decided; and while she does not concede the issue, she has expressly chosen not to re-argue the matter. Dkt. No. 27, p. 11. Accordingly, the Court finds that the life insurance policies are ERISA-covered plans.

Furthermore, the Court previously ruled that all of Murillo's state law claims were pre-empted by ERISA. Dkt. Nos. 23, 24. Again, there have been no developments in the record that would change the prior analysis. For that reason, the Court finds that all of Murillo's state law claims are pre-empted and turns to the analysis of Murillo's claims under ERISA.

**B. ERISA**

In analyzing Murillo's claims under ERISA, the Court notes that Murillo had two separate policies: the one that she first acquired in 2006, before her husband left for Mexico; and the one acquired in 2010, a year after her husband left and never returned. The issues underlying each policy, however, are similar and will be addressed together.

As previously noted, Murillo says that she purchased these insurance policies from AFLAC, believing that they insured her husband's life. Her subjective belief, however, does not create an issue of material fact.

In analyzing ERISA claims, the Court looks to the unambiguous plan documents.

McCall v. Burlington N./Santa Fe Co., 237 F.3d 506, 511 (5th Cir. 2000) ("clear and unambiguous statements" in the plan are "binding."). In this case, Murillo's applications for life insurance – both in 2006 and 2010 – clearly show that, regardless of her personal intent, the policies did not insure her husband's life. Dkt. No. 26-2, p. 26; Dkt. No. 28-2, p. 37. In both instances, the application stated "write spouse's name below if spouse is applying for coverage; if no spouse or spouse will not be covered, put 'N/A' or 'none.' "). Id. In both applications, the word "none" was written in the provided space, indicating no spousal coverage was sought. Thus, under both policies, the documents clearly show that neither policy insured Jorge Murillo's life. Moreover, Murillo admits that AFLAC charged her premiums based solely upon insuring her life and never collected premiums for any purported coverage of Jorge's life. Dkt. No. 30-1, pp. 12, 16.

As an initial matter, both the first and second insurance policies contained a "merger" clause, which indicated that the written policy, applications, endorsements, and written amendments, constituted "the entire contract." Dkt. No. 26-2, pp. 33, 85. This merger clause, by its express terms, would appear to foreclose any claims related to Murillo's subjective beliefs.

Despite the existence of the merger clause, if Murillo can show that AFLAC's agents misled her, that showing can overcome the restrictions imposed by the merger clause. That appears to be Murillo's intent, i.e. that AFLAC is estopped from denying coverage of her husband. In other words, Murillo argues that AFLAC's agent misled her and caused Murillo to believe that she had purchased life insurance on her husband. See Dkt. No. 27, p. 7 (asserting that Murillo was "led to believe initially [that] there was spousal coverage" of Jorge's life). Murillo has argued that she asked for family coverage and believed that she received such coverage.

In support of her claimed belief, Murillo points to a part of the application for coverage, where it asked, "will the purchase of the spouse rider give your spouse more than $50,000 total face value of life insurance coverage with AFLAC?" Dkt. No. 26-2, p. 26; Dkt.

8

No. 28-2, p. 37. That question had check boxes for three possible answers: Yes, No, and N/A. Id. In both applications, all three boxes were left unchecked. Id. Murillo argues that the failure to check any of the boxes is evidence that Murillo sought spousal coverage. Dkt. No. 27, p. 12.[4] Thus, Murillo is arguing that because of the agent's actions and failures, AFLAC should be forced to honor their promise, as she understood it. That claim is referred to here as an "ERISA-estoppel claim."

"To establish an ERISA-estoppel claim, the plaintiff must establish: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." High v. E-Systems Inc., 459 F.3d 573, 579 (5th Cir. 2006). The burden lies with the claimant to establish all three elements. Id. Despite Murillo's argument, the record lacks factual support for such a claim.

Murillo has failed to provide evidence to establish two of the required three elements to raise an estoppel claim.[5] While Murillo asserts that she asked for family coverage, there is no evidence in the record that any AFLAC representative actually told her that Jorge Murillo's life was insured. Thus, there is no evidence to show that any AFLAC representative made a misrepresentation, much less a material misrepresentation.

Even if the Court were to accept as true – for present purposes – that an AFLAC representative made such a representation, Murillo must show reasonable and detrimental reliance upon such a misrepresentation. Murillo admits that she received a copy of her signed application and policy shortly after each policy was issued. Dkt. No. 26-2, p. 9; Dkt. No. 30-1, p. 16. The fact that she received a copy of her application and plan shortly after

---

[4] The Court notes that Murillo has not attempted to explain how an agent's failure to answer a question on the form shows that she asked for spousal coverage. Nevertheless, because Murillo cannot establish estoppel, her argument does not affect the outcome.

[5] The Fifth Circuit has never defined what exactly constitutes "extraordinary circumstances." However, given Murillo's failure to establish the first two elements of an estoppel claim, the Court need not determine if extraordinary circumstances were present in this case.

issuance establishes that any reliance was not reasonable. See Mello v. Sara Lee Corp., 431 F.3d 440, 444 (5th Cir.2005) (it was unreasonable for plaintiff to rely on benefits statements from human resources representative, rather than the unambiguous provisions of the ERISA plan). Indeed, that fact alone vitiates Murillo's estoppel claim. High v. E Sys. Inc., 459 F.3d 573, 580 (5th Cir. 2006) (reliance is unreasonable when it conflicts with unambiguous policy documents); Nichols v. Alcatel USA, Inc., 532 F.3d 364, 374 (5th Cir. 2008) (same); Robinson v. New Orleans Employers ILA AFL-CIO Pension Welfare Vacation & Holiday Funds, 269 F. App'x 516, 519 (5th Cir. 2008) (same).

Moreover, Murillo admitted that AFLAC charged her premiums based solely upon insuring her life and Murillo that never requested that additional premiums be charged for any alleged coverage of Jorge. Dkt. No. 30-1, pp. 12, 16. Given that the premiums charged matched the coverage received, Murillo's purported reliance seems even less reasonable.

Accordingly, Murillo cannot maintain a claim for estoppel against AFLAC.[6] Furthermore, as previously discussed, the evidence unambiguously establishes that Murillo did not actually purchase life insurance on Jorge Murillo's life. Thus, AFLAC correctly denied Murillo benefits under the plan. There is no genuine dispute of material fact and summary judgment should be granted to AFLAC.

### C. Failure to Serve

As previously noted, Defendant Denise Phillips was never served in this case. A plaintiff has 90 days to serve a defendant after a complaint is filed. FED. R. CIV. P. 4(m). If the Plaintiff fails to timely effectuate service, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Id.

---

[6] The Court notes that even if Murillo could maintain an estoppel claim against AFLAC for the second policy, her ERISA claim would still fail. The policy went into effect on October 1, 2010, and would have insured against Jorge's "death while this policy is in force." Dkt. No. 28-2, p. 45. As a result of Murillo's petition to the Cameron County Court at Law Number 3, Jorge was declared to be dead as of September 11, 2009. Dkt. No. 26-2, pp. 122-130. Thus, as a matter of law, Jorge Murillo's death occurred prior to the second policy being in force. TEX. ESTATES CODE § 454.001.

It is recommended that the claims against Phillips be dismissed without prejudice for failing to timely effectuate service. Murillo admits that she "was likely wrong in believing that it was co-defendant Denise Phillips who had been the AFLAC representative Plaintiff dealt with in 2010." Dkt. No. 27, p. 6. Thus, there is no reason to allow Murillo additional time to effectuate service against a defendant that she admits she has no claim against.

### IV. Recommendation

It is **RECOMMENDED** that the motion for summary judgment filed by AFLAC be granted. Dkt. No. 26.

It is further **RECOMMENDED** that any claims against Denise Phillips be dismissed without prejudice to refiling for failure to timely effectuate service.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on March 22, 2017.

_____
Ronald G. Morgan
United States Magistrate Judge